J-A23029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| SCOT DEE EMEIGH | |
| Appellee | No. 1497 WDA 2014 |

Appeal from the Order Entered August 15, 2014
In the Court of Common Pleas of Somerset County
Criminal Division at No(s): CP-56-CR-0000073-2013

BEFORE:  GANTMAN, P.J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:　　　　　　**FILED NOVEMBER 06, 2015**

The Commonwealth of Pennsylvania appeals from the order, entered in the Court of Common Pleas of Somerset County, which partially granted Scot Dee Emeigh's petition for writ of habeas corpus after he was charged with theft by deception[1] and home improvement fraud[2] under the Home Improvement Consumer Protection Act (HICPA).[3]  Upon review, we affirm in part, reverse in part, and remand for further proceedings.

In July 2012, Emeigh prepared six proposals for home improvement projects on the property of the elderly victim, Dorinda Bowser.  The work

---

[1] 18 Pa.C.S. § 3922(a)(1).

[2] 73 P.S. § 517.8(a)(2).

[3] 73 P.S. §§ 517.1-517.18.

was to be completed on Bowser's living room,[4] day room,[5] laundry room,[6] house and barn roofs,[7] fireplace,[8] and included replacement of three windows.[9] In each proposal, Emeigh held himself out to be a licensed contractor. None of the proposals included anticipated start or end dates. Bowser accepted all of the proposals in July and August 2012 and paid the down payment for each proposal by check.[10] After Bowser accepted the

_____

[4] Proposal #2713 involved a total cost of $46,500.00 and down payment of $23,500.00.

[5] Proposal #2705 involved a total cost of $2,800.00 and down payment of $1,400.00.

[6] Proposal #2700 involved a total cost of $7,700.00 and down payment of $3,850.00.

[7] Proposal #2698 involved a total cost of $13,800.00 and down payment of $6,900.00.

[8] Proposal #2716 involved a total cost of $14,800.00 and down payment of $7,400.00.

[9] Proposal #2699 involved a total cost of $1,575.00 and down payment of $787.50.

[10] The total amount of the checks was $53,137.50, while the total of the down payments was $43,137.50, for a difference of $9,300. Part of this excess in payment can be explained by alterations to Proposal 2698 for the house and barn roof. A portion of the work was completed and the next installment of 25 percent of the total, or $3,450.00, was paid as agreed. Additional work was agreed upon in the amount of $1,800.00 and a $900.00 deposit was paid. However, this leaves $4,950.00 in excess payment that is not accounted for except that Bowser testified that "[e]very time [Emeigh] came, he asked for more money." N.T. Habeas Corpus Hearing, 4/16/14, at 44.

proposals, Emeigh requested additional payment, allegedly for unforeseen labor and materials costs, including trusses for the living room renovations. Bowser gave personal property to Emeigh as payment for the extra labor and materials Emeigh requested.[11]

Emeigh completed some of the work during August 2012, including demolition work inside the living room and removing and replacing some shingles on the house's roof. Bowser waited approximately one month and called Emeigh to ask when he would return to finish the work. He did not indicate when he would come back and did not did not return to finish the projects, despite Bowser making multiple telephone calls to Emeigh requesting that he do so during September and October 2012. Additionally, Bowser testified that Emeigh indicated he would be purchasing trusses from Berlin Lumber, but when she contacted the company, no record of such a purchase existed.

Bowser contacted Emeigh once more, in November 2012, before she resorted to contacting the police. Emeigh indicated that he would try to

---

[11] For an agreed-upon value of $10,900.00, Bowser transferred title to two vehicles to Emeigh and gave him a wood burner and a glass block. The vehicles included a 2000 Chevrolet Silverado valued at $7,500 and a 1984 Jeep CJ-5 valued at $3,000. The wood burner and glass block were valued at $200.00 each. N.T. Habeas Corpus Hearing, 4/16/14, at 46; **see also** Commonwealth's Exhibit G. In addition to the vehicles and other items, it appears that Bowser gave Emeigh an additional $6,200.00 based upon the list of extra items provided to Emeigh in Exhibit G, although she did not testify to this fact at the motion hearing beyond indicating that Emeigh asked her for more money each time he came to her house.

finish the work; however, he never returned after this telephone call. Bowser contacted the Pennsylvania State Police, and an investigation revealed that Emeigh's company, Emeco Contracting, did not have a valid contractor's license and that Emeigh had not repaid any of the down payment money to Bowser.

On November 28, 2012, Emeigh was charged with theft by deception and home improvement fraud based upon receiving advance payment for services and failing to perform or provide such services. After multiple continuances requested by Emeigh, he filed a petition for writ of habeas corpus on February 10, 2014, contending that the Commonwealth could not set forth a prima facie case against him regarding either charge. Following oral argument on April 16, 2014, the trial court granted the petition on August 14, 2014, as to all of the proposals outlined above except for Proposal #2713, for living room renovations.

The Commonwealth timely filed a notice of appeal and court-ordered concise statement of orders complained of on appeal pursuant to Pa.R.A.P. 1925(b). On appeal, the Commonwealth raises the following issues for our review:

1. Whether the lower court erred in granting partial relief[12] on [Emeigh's] Motion for Writ of Habeas Corpus/Motion to

_____

[12] The Commonwealth has certified that the order in question will substantially handicap the prosecution in accordance with Pa.R.A.P. 311(d) (the Commonwealth may take an appeal "from an order that does not end

*(Footnote Continued Next Page)*

Quash, when sufficient evidence was presented to establish a prima facie case as to both crimes charged against [Emeigh?]

2. Whether the lower court erred in granting partial relief on [Emeigh's] Habeas Corpus/Motion to Quash, by dismissing evidence related to five specific individual contracts/proposals (more akin to Motion in Limine), when Commonwealth charged [Emeigh] with only one count of Receiving Advanced Payment for Services and Failing to Perform or Provide such Services, . . . and one count of Theft by Deception, . . . on a theory of course of conduct and did not charge [Emeigh] based on each individual contract?

3. Whether the lower court erred in granting relief akin to a Motion in Limine when the Defendant did not request such relief in its Motion for Writ of Habeas Corpus or during the hearing related to same?

Brief for Appellant, at 5.

Our review of the decision to grant or deny a petition for writ of habeas corpus "is limited to deciding whether a prima facie case was established." *Commonwealth v. Landis*, 48 A.3d 432, 444 (Pa. Super. 2012).

[T]he evidence should be such that if presented at trial, and accepted as true, the judge would be warranted in **allowing the**

*(Footnote Continued)* ————————

the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution"); *see also Commonwealth v. White*, 910 A.2d 648, 655 (Pa. 2006) ("when an order terminates or has the practical effect of terminating some or all of the Commonwealth's case, or substantially handicaps the Commonwealth's case, and the Commonwealth has certified the same in good faith, the Commonwealth is entitled to an interlocutory appeal as of right under Rule 311(d)"). The practical effect of the order in the instant matter is to handicap the Commonwealth's case by greatly reducing the basis for the charges against Emeigh. Thus, we have jurisdiction over this appeal.

> **case to go to the jury.** . . . . [W]e must view the evidence in the light most favorable to the Commonwealth, and we are to consider all reasonable inferences based on that evidence which could support a guilty verdict. The standard clearly does not require that the Commonwealth prove the accused's guilt beyond a reasonable doubt at this stage.

*Id.* (emphasis in original). "Rather, the prima facie standard requires evidence of the existence of each and every element of the crime charged." *Commonwealth v. Marti*, 779 A.2d 1177, 1180 (Pa. Super. 2001). However, "the weight and credibility of the evidence are not factors at this stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense." *Id.*

Theft by deception occurs when an individual "obtains or withholds property of another by deception." 18 Pa.C.S. § 3922(a). A person deceives another if he intentionally "creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise." 18 Pa.C.S. § 3922(a)(1). Home improvement fraud has similar elements, and occurs if a person, with intent to defraud or with knowledge that he is facilitating a fraud,

> receives any advance payment for performing home improvement services or providing home improvement materials and fails to perform or provide such services or materials when specified in the contract taking into account any force majeure or unforeseen labor strike that would extend the time frame or unless extended by agreement with the owner and fails to return the payment received for such services or materials which were not provided by that date.

73 P.S. § 517.8(a)(2).

Whether the Commonwealth presented sufficient prima facie evidence of the charges against Emeigh is dispositive of all of the issues raised in this appeal. It is obvious from the record that Emeigh obtained a significant amount of money from Bowser and completed very little work in exchange. Thus, whether the evidence was sufficient to make out a prima facie case in the instant matter depends upon whether the Commonwealth presented evidence that Emeigh intentionally deceived Bowser.

We note that "[c]riminal intent may be established by either direct or circumstantial evidence." *Commonwealth v. Parker*, 564 A.2d 246, 249 (Pa. Super. 1989). While failure to perform a promise alone does not support an inference of guilt, failure to perform "may be considered with . . . other evidence in determining whether appellant intended to defraud." *Commonwealth v. Quartapella*, 539 A.2d 855, 857 (Pa. Super. 1988). Where it is alleged that deception occurred regarding intent to perform a contract, the intent not to perform must have existed at the time the contract was executed. *See Commonwealth v. Gallo*, 373 A.2d 1109, 1111 (Pa. 1977) ("if appellant's conviction for theft by deception is to be sustained, it must be because appellant never intended to perform his part of the contract"). Similarly, home improvement fraud requires intent not to perform or knowledge that performance would not take place when the contract is executed. *See* 73 P.S. § 517.8(a).

Here, Emeigh performed a small portion of the work immediately after Bowser signed the proposals and completed no further work despite repeated promises do so. We note that Emeigh appears to have committed a number of technical violations of HICPA in preparing and executing the proposals, including holding himself out as a licensed contractor when he did not have a current license.[13] While this violation is not necessarily criminal in nature, the Commonwealth contends that Bowser relied upon this misrepresentation in paying Emeigh significant down payments for home improvement work.

The Commonwealth also asserts that Emeigh engaged in a deceptive scheme by preparing numerous proposals, since this enabled him to confuse Bowser regarding her obligations. The record reveals that Bowser wrote out checks to pay the down payments, but each down payment does not have a correlating check. Instead, some of the checks are for several down payments, some are for partial down payments, and together they add up to an amount that includes additional money not accounted for in the proposals. *See* n. 10, *supra*. Bowser testified that Emeigh continually asked her for more money, despite completing no further work and not

---

[13] *See* 73 P.S. § 517.9(1). Additionally, Emeigh accepted more than one-third of the contract price as a down payment in contracts involving more than $5,000, *see* 73 P.S. § 517.9(10), and prepared proposals without start and end dates, *see* 73 P.S. § 517.7(a)(6).

purchasing required materials. When Bowser ran out of cash, Emeigh accepted vehicles and other goods for payment. The numerous proposals and additional payments form the basis of the Commonwealth's theory that Emeigh used a "deceptive scheme to defraud." **Quartapella**, **supra** at 857 (scheme involving repeated requests for loans from victim, misrepresentation of reasons for advances, and no attempts to repay loans provided sufficient evidence to support theft by deception conviction).

Based upon the evidence outlined above, the trial court determined that the Commonwealth presented a prima facie case on both counts, but only as to proposal #2713, for living room renovations. The trial court determined that proposal #2713 was distinguishable from the other proposals based upon the request for additional payment resulting in Bowser transferring title to two vehicles and giving other items to Emeigh for payment. However, the trial court's rationale for rejecting the majority of the proposals is flawed, since Emeigh was not charged with separate counts for each proposal and the trial court was not tasked with determining whether each proposal resulted in a prima face case. Indeed, the trial court's order simply bears no relation to the manner in which Emeigh was charged. Moreover, the Commonwealth's theory of the case includes a scheme or course of conduct involving all of the proposals. **Quartapella**, **supra**. Thus, we find the trial court erred in partially granting Emeigh's petition for writ of habeas corpus.

Order affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2015